**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| RONALD LEE WHITE, | Case No. |
| Plaintiff, | |
| | **JURY TRIAL DEMANDED** |
| v. | |
| TRANSUNION RENTAL SCREENING SOLUTIONS, INC., | |
| Defendant. | |

**<u>COMPLAINT</u>**

Plaintiff Ronald Lee White, by and through his counsel, brings the following Complaint against Defendant TransUnion Rental Screening Solutions, Inc. ("TURSS") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of a tenant screening report ("consumer report") that Defendant published to Plaintiff's potential landlord, which falsely portrayed Plaintiff as an individual convicted of a criminal offense involving sexual exploitation of children.

- 1 -

## INTRODUCTION

1.     This is an individual action to recover damages for violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2.     Defendant assembled and published an inaccurate consumer report to Plaintiff's prospective landlord, which included a sex offender registry record from Georgia.

3.     In fact, Plaintiff has never been charged with or convicted of a sex crime in his life. He is certainly not a sex offender.

4.     The record reported by Defendant does not belong to Plaintiff; rather, it belongs to a different individual.

5.     Plaintiff's prospective landlord denied Plaintiff's housing application after receiving the consumer report from Defendant, in which Defendant published the sex offender registry record belonging to another person.

6.     Defendant's inaccurate reporting could have easily been avoided had Defendant performed a cursory review of the widely available public court records pertaining to the criminal records prior to publishing the information to Plaintiff's prospective landlord.

7. Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking housing by prejudicing their prospective landlords with inaccurate information.

8. Defendant's inaccurate report cost Plaintiff the ability to rent the apartment unit that was suitably accommodating of his needs, causing damages.

9. Thus, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA.

## PARTIES

10. Plaintiff Ronald Lee White ("Plaintiff") is a natural person residing in Buford, Georgia, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

11. Defendant TransUnion Rental Screening Solutions, Inc. ("TURSS") is a corporation doing business throughout the United States, including the State of Georgia and in this District, and has a principal place of business located at 555 West Adams Street, Chicago, Illinois 60661. Defendant can be served at its registered agent for service Illinois Corporation Service Company 801 Adlai Stevenson Drive Springfield, Illinois 62703. Defendant is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f).

**JURISDICTION AND VENUE**

12.    This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

13.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

**FACTS**

14.    In or about February 2025, Plaintiff began searching for a new apartment. Specifically, Plaintiff was searching for an apartment that was in a good location, meets his family's space requirements, and is comfortable.

15.    In or about February 2025, Plaintiff, along with his fiancé and daughter, applied for a new apartment.

16.    They toured the property located at 3080 St Andrews Way Duluth, GA 30096, found it suitable, qualified for it, and submitted their information for a tenant screening background check.

17.    The apartment complex where the Plaintiff applied used TransUnion SmartMove, via TURSS, for the tenant screening background check.

18.    Plaintiff and the other applicants were instructed to click on a link, enter their personal identifying information, and pay $47.00 per applicant for the background check.

19.    The landlord and/or management company contracted with Defendant to conduct tenant screening on prospective tenants to determine whether the prospective tenant is eligible to rent an apartment.

20.    On February 2, 2025, Defendant sold a consumer report about Plaintiff to the landlord and/or management company, wherein Defendant published inaccurate information.

21.    The consumer report, identified as tenant screening report by Defendant, is a consumer report regulated by the FCRA. Within that consumer report, Defendant published inaccurate information about Plaintiff.

22.    Specifically, the "Criminal Records" section of the consumer report included the following inaccurate and stigmatizing information stating that Plaintiff was listed on the Georgia Sex Offender Registry, which appeared in the report as follows:



23.    The scurrilous and false sex offender registry record, accusing Plaintiff of "SEXUAL EXPLOITATION OF CHILDREN," published by Defendant about Plaintiff to the landlord did not belong to Plaintiff.

24.    It is indisputable that prior to furnishing the report about Plaintiff to the landlord, Defendant failed to consult widely available sex offender registry databases, which indicate that the aforementioned record do not belong to Plaintiff.

25. A cursory review of the widely available public court records and sex offender registry databases confirms that the sex offender registry record belong to an unrelated individual named Ronald Allen White ("Sex Offender White").

26. Defendant's unreasonable or non-existent procedures allowed Defendant to publish a report about Plaintiff wherein Defendant mixed the criminal record of Sex Offender White into that same report. Had Defendant actually consulted or obtained the widely available public court records and sex offender registry databases regarding the record, it would have seen the obvious discrepancies between Sex Offender White and Plaintiff.

27. The discrepancies that should have caused Defendant to realize Plaintiff is not the same person as Sex Offender White include the following:

    (a) Plaintiff's legal name is "Ronald Lee White," but the name of the individual associated with the sex offender registry record is identified in the public court records as "Ronald *Allen* White";

    (b) The first-and-last name that matched, Ronald White, is a very common name and thus could not have served as the only basis for matching, especially given the middle name discrepancy;

    (c) Plaintiff's date of birth, which was provided to Defendant prior to publishing the consumer report, is May 18, 1971, yet the

public court records indicate that Ronald Allen White's date of birth is March 8, 1971;

(d)    Plaintiff's height and weight differ significantly from those listed for Sex Offender White in the court records when compared to Plaintiff's Driver's License. According to the records, Sex Offender White is listed as weighing 183 lbs, while Plaintiff weighs 240 lbs. More egregiously, Sex Offender White is listed as 5'5" tall, whereas Plaintiff is 6'4" tall; and,

(e)    Plaintiff's Social Security number, which was provided to Defendant, is entirely different than that of Ronald Allen White as confirmed by the public court records.

28.    Had Defendant followed reasonable procedures, it would have discovered that the inaccurate, stigmatizing sex offender registry record belonged to someone else, not Plaintiff.

29.    In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Plaintiff's prospective landlord inaccurate information about Plaintiff, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

30. On or about February 2, 2025, Plaintiff received a call from the landlord and/or property manager and was informed that his application was denied as a result of the sex offender registry record.

31. Plaintiff was utterly humiliated and panicked, confused, and concerned about the impact of another individual's sex offender records being reported on his consumer report.

32. Plaintiff was also humiliated to report the result to his fiancée.

33. Despite the Plaintiff's diligent attempts to address the issues concerning his background check, the landlord ultimately denied his tenancy application and proceeded to lease the apartment to other tenants.

34. Plaintiff reasonably believes that due to Defendant's inaccurate reporting, the landlord formed an extremely negative opinion about Plaintiff and moved on to other candidates.

35. Defendant's false report cost Plaintiff a housing opportunity that met his needs, including a favorable location, adequate space, and overall comfort.

36. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; loss of time and money trying to correct the consumer report; the expenditure of labor and effort disputing and trying to correct the inaccurate

reporting; damage to her reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

37. The rental property had been perfectly suited to his new family's needs, priced at a reasonable $2,600 per month.

38. This property was essential to his plan to sell his current home and move forward with his life after a difficult divorce.

39. Defendant's actions effectively denied him this opportunity.

40. Plaintiff was forced to restart his housing search, incurring delays and costs.

41. The delay in securing a rental property directly impeded Plaintiff's ability to sell his current home, forcing him to continue living in a past life and setting he had hoped to move on from after the divorce.

42. This delay prolongs his monthly mortgage payments, resulting in quantifiable financial losses.

43. Recently, a background check was conducted during a visit to his son's military base came back clear and without issue. Another background check for his passport application few weeks ago also went smoothly. It is TURSS's unreasonable procedures that differentiate TURSS from the other entities.

44. On February 3, 2025, Plaintiff was so distressed by Defendant's actions, calling him a sex offender, that he was compelled to take a day off work.

45. Plaintiff and his family were shocked when they saw the false information on the background report.

46. Plaintiff has anxiety issues, and upon learning about the report, he nearly passed out.

47. Having been on dialysis for six years before receiving a transplant, the stress affected him so much that he had to call his fiancée and daughter to assist him because he felt like he might have a heart attack.

48. Plaintiff couldn't comprehend how he could be accused of such a crime.

49. Plaintiff is deeply concerned about how this situation might affect his relationships.

50. Plaintiff's daughter and son-in-law, who have children, were also stunned.

51. Plaintiff fears that his son-in-law might believe the false accusations and change his attitude toward him.

52. Furthermore, Plaintiff's employment includes teaching children at school.

53. Plaintiff is afraid he might lose his job due to TURSS's false reporting.

54.    Defendant's error has created a significant risk and/or fear that Plaintiff will lose his job, which would have devastating financial consequences for Plaintiff's family, as he is the primary income provider.

**COUNT I**
**Violations of 15 U.S.C. § 1681e(b)**
**Failure to Follow Reasonable Procedures**
**to Assure Maximum Possible Accuracy**

55.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

56.    Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

57.    Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c).

58.    The above-mentioned tenant screening report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

59.    Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the consumer report it sold about Plaintiff as well as the information it published within the same.

60.    Defendant willfully violated 15 U.S.C. § 1681e(b) in that its conduct, actions, and inactions were reckless and/or willful, rendering Defendant liable for actual or statutory damages, and punitive damages in an amount to be determined

by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

61.    Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief: (i) Determining that Defendant negligently and/or willfully violated the FCRA; (ii) Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA; (iii) Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and (iv) Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: May 29, 2025

By: */s/ Moshe Boroosan*
Moshe Boroosan, GA Bar #744128
CONSUMER ATTORNEYS
68-29 Main Street
Flushing NY 11367
T: (718) 887-2926
F: (718) 247-8020
E: mboroosan@consumerattorneys.com

*Attorneys for Plaintiff Ronald Lee White*